We are ready to hear arguments in Cropp v. Larimer County, Colorado. May it please the court, Michael Fairhurst appearing on behalf of the appellants, Stanley Cropp and Kathy Cropp. I am joined by my co-counsel, Darrell Kilmer. Fundamentally, this is a case about reasonableness. The key question is whether the Larimer County Jail reasonably accommodated appellant, Stanley Cropp's disabilities arising from his Alzheimer's disease and dementia. How about, fundamentally, this case is about accommodation and whether a handicapped person was afforded an accommodation or whether the defendant, or rather the person, the handicapped person, was merely afforded the same privileges available to the universe. That is one of the key issues. That's the way I see this case. I agree, Your Honor. One of the key issues in the case is whether Mr. Cropp's disabilities were accommodated at all, in fact. And as the on-site supervisor, Candy Wolfert, testified, she treated him exactly the same as his non-disabled counterparts. She testified that she did this even though she knew he was struggling to understand these complex legal forms that the jail had given him. That's the on-site supervisor. She was the one calling the shots. Well, what service, don't we have to look at what service or benefit he was excluded from? Yes, that is indeed a key question. And what is that service or benefit he was excluded from? He was denied a meaningful opportunity compared to his non-disabled counterparts to understand the legal forms that he had been given. It's akin to a situation like the one confronted in Robertson, where a person is hearing impaired and they're denied the opportunity to meaningfully participate in a probable cause hearing because they can't hear what's going on. The most meaningful situation that was hopefully going to occur here was a conversation between husband and wife. And the wife concluded, as I understand it, that talking through this thick glass or plexiglass, whatever, was not satisfactory. She wanted to sit next to him to convey whatever information was needed. That is correct. And meanwhile, it's... So where is the comparator? The comparator is a person who doesn't have Alzheimer's disease and dementia, who's not terrified because they've been wrongfully arrested in the middle of the night. The comparator is their level of understanding when reviewing these legal forms with a bunch of legalese as compared to terrified Stanley Kroc on December 26th through 27th 2013. But isn't when you have a communication between someone who is in custody and a loved one who wants to communicate with them, isn't the standard opportunity for communication exactly what the wife was given here? So had they attempted to communicate through thick glass, their ability to communicate would not have been as effective as people who are not afflicted by disability. Was that even attempted? It was not. However, Mr. Kroc, there's... How do we know it's necessary? I'm confused by that. Isn't the most basic requirement that you established that this was a necessary accommodation? And there's some obligation to at least try to work between the parties to at least utilize the accommodation that's available, which is, in this case, to talk to each other through glass with a phone up to your ear. And he wasn't wearing a pair, so he could hear. And she wouldn't try that. She wouldn't even try that. So how do we even establish that this was necessary in this case? That is another key issue in the case, for sure. And may I, in deference to Judge Moritz's question, say that 28 CFR, section 35.160, paren C, paren T, paren double I, requires that a public entity shall rely on an adult accompanying an individual to facilitate communication with the individual with a disability, requesting that the accompanying adult facilitate communication and accompanying adult agrees to provide the communication. And in this case, is it not true that the accompanying adult of the disabled person, that is, the wife, asked and explained that communicating with a glass and telephone wasn't going to work, and could she please personally communicate it to her husband to help this person with Alzheimer's? Absolutely. And then under section 35.160, paren B, paren 2, and I quote, the entity, quote, in determining what type of auxiliary aid and services are necessary, shall give primary consideration to the request of individuals with disabilities. Indeed. And in this case, was a request made to speak to the person personally and work with him. Absolutely. And as this court held in Robertson, the Tenth Circuit gives substantial deference to these regulations. To return to your question, Judge Moritz. Where necessary, which you just read, where necessary is the preliminary question. Sure. It was necessary. She said it was, but we don't have any effort at all to try to talk to him sitting there right in front of him with a glass, but a phone. Here's the key issue with that. Wouldn't this case be a lot better had she said, let me try that? And then it doesn't work out. Respectfully, not really. Because the issue here should be focusing on the individual with a disability. The jail is on notice that regardless of what Ms. Propp was doing, he needed help interpreting these forms and he wasn't getting it. If the jail knew that his wife wasn't willing to speak with him through this thick glass, the jail knew that he needed extra help from some other means, and the jail said, tough luck, basically. As this court held in Robertson, once a jail is on notice that a person needs accommodations, they are required to do so to the maximum extent possible. That actually was maximum extent possible. Literally, it was in italics in this court's Robertson holding. And that applies here. So let's say... Couldn't this apply to a lot of people? Couldn't there be a lot of people who are arrested and they're being detained and they'd like to be released? They're not able to process these forms for whatever reason. Couldn't that be the case with a lot of people? That they could say, well, I'd like to have my person that's here come in and I'd like to not bother with any of your safety rules and I'd like an exception. I'd like for them to sit next to me instead of across from glass. It's secure. Why couldn't a lot of people say that? It's possible, but the issue here, the issue for this court... Regardless of whether they have a disability or not. Sure. Is it possible? Absolutely. And that would be a different set of facts that may or may not give rise to a jury question. The issue here is simply whether on the night after Christmas, December 26, 2013, an elderly retired pharmacist with Alzheimer's disease, should he have been able to, A, meet with his wife of about 40 years in an unobstructed setting during a night which Candy Wolfert testified wasn't particularly busy, or B, even if... Is that the standard, though? In a jail? Well, we can make exceptions as long as we're not very busy on these security requirements of ours. Well, this standard, as this court is likely aware, is twofold. First of all, what sort of reasonable accommodations are necessary? Was the person denied medical access? Yes. And then, second, undue burden. It's on the jail, as the law states. It's on the jail to demonstrate undue burden. That's a question of fact, generally, as this court also noted in Robertson. And so, it's a fact-specific analysis. It's one of the reasons why the entry of summary judgment was specific. The issue here is simply... But in jail, when we're talking about a jail demonstrating undue burden, you seem to be suggesting the jail could have to demonstrate undue burden on a case-by-case basis with every single prisoner, basically, that declares a disability. It's a fact-specific analysis. I mean, sometimes yes, sometimes no. There's also the notion of fundamentally altering programs and services. It sort of meshes into undue burden, but it is a somewhat separate issue. And that isn't necessarily as fact-specific. But a key point to recognize is... One key point, among others, is we're not launching a facial challenge at the policy. And we're also not saying that while we firmly believe the district court showed too much deference to jail and prison officials because there weren't a lot of facts to support it, we're not saying that deference shouldn't be part of the jury's reasonableness analysis. There are a lot of facts in play here. Our point is simply that, on this particular night, should the jury decide whether the jail behaved reasonably? Of course, as we contend, yes, it is a jury question. Have you shown that reasonable accommodation was necessary? Yes. Yes, we have. Well, the jail was on notice from both Mr. Kropp to the best of his ability. He has a mental disability and Ms. Kropp. Don't you have to return to something that's already been stated? Don't you have to have some evidence that the procedures that were in play were not satisfactory for communication between the husband and wife? Sure, and there are... Yes, yes, there are. And that did not occur. That did not occur. She did not use the procedures that were available. So have you even carried a prima facie case here? Yes, we have, respectfully. The person with the disability should be a focus. The person with the disability is Stanley Kropp. So he should get whatever he wants because he's disabled? Of course not. We're saying that he should receive meaningful access to the jail's programs and services so that he is able to participate at a roughly commensurate level with people who aren't afflicted with his terrible disability. Of course he wanted to get out of jail, but he was terrified, and he needed help interpreting the forms, and the record is crystal clear that not a single accommodation was offered. This family visitation option was one. Another one that the jail was aware of and chose not to pursue was literally anything else. The jail never even attempted to engage in an interactive accommodation discussion. It's true in cases like Barber, which this court decided the law is that a person has a duty to engage reasonably in an interactive accommodation discussion. That's different than what happened here where person after person at the jail said, we're going to treat Mr. Kropp exactly the same as his non-disabled counterparts. I'm going to reserve the remainder of my time for rebuttal. Thank you. Good morning. May it please the court. Good morning. My name is David Goddard. I appear on behalf of the Appalachee-Larimer County and alongside with me at council table is my partner, Michael Lowe. Your Honor, I would submit that the Kropps have not established necessity as a threshold matter for an ADA accommodation. How would you define accommodation? How would I define accommodation? How's your client? What do they define accommodation? An accommodation, or really how we would characterize it under Title II, which was a modification, would be to any kind of modification that is established or proven to be necessary to put a disabled individual on the same playing field as a non-disabled individual. All right. And if Judge Moritz, a non-disabled person, and I, a disabled person with Alzheimer's, present ourselves at the county jail of Larimer County under these very same circumstances, she's not disabled, I am, as I understand your position is that you afforded an accommodation to the Alzheimer's patient because you afforded me, in this case, the same means of communication as you did to Judge Moritz. Well, that's certainly how the plaintiffs in this case have characterized that, but I would disagree. I would say that the Larimer County Jail would provide you a modification. What modification was presented to this patient that was not presented to the non-disabled person? I don't know that that's the proper analysis. Well, maybe that's the wrong analysis, but that's my question. Sure. And my question, I think the answer to my question is none. Because your view is, okay, you talked to the mic through the glass on a microphone or a telephone just the same way as Moritz. And that that's your accommodation. And so that may be correct, is that your legal definition of accommodation, but I'm going to go back to these sections that I read. And these sections say that you shall accommodate by relying on the adult accompanying an individual to facilitate communication to the individual with a disability requesting the communication. And the man's wife came and she said, my husband has Alzheimer's. She knows her husband. I presume she's been living with him. I forget what the record says, but a good long time. And she said, I'd like to speak to him personally and help him with these forms because I'm sure he doesn't understand what's happening. That was not done, correct? It was not done. All right. Now, just a second. Section 35160 says that you shall give preliminary, primary consideration to the request of an individual with disabilities. It's not permissive. It's mandatory. In this case... Well, I would argue that it is permissive. Well, fine, fine. You argue what you want, but I'm going to read the language of the reg. Shall give primary consideration. In this case, the request was made. That was rejected, correct? Well, it was not complied with because it violated the safety policy of the judge. I understand. I understand. And the very safety policies that you would have, in my previous example, would have given to Judge Moritz, you'd give it to me and you'd say, I've given you an accommodation. But, Your Honor, I think the point that's missed here is that some accommodations can be systematic, like a handicapped parking space or a wheelchair accessibility ramp. Right. And just because an able-bodied person can use the wheelchair accessibility ramp doesn't mean that that building hasn't accommodated somebody with a disability in a wheelchair. I think that's a wonderful example. So Judge Moritz shows up, she's not disabled, and she parks in the disabled parking lot. What are you going to do? Well, she would be ticketed and potentially towed. All right. If I am disabled and I show up, and I'm told, you know I'm disabled, you can see that, and I park in the parking lot, you're going to let me do that, right? Correct. Okay, good. So we're not being treated the same, are we? No. All right. Now, going back to my example, here's this glass and here's this telephone. The wife told you, under these regs, as the accompanying adult, my husband has a disability. Now, you did not allow that accommodation, correct? We did not. All right. Now, hold on. Next question. Just a second. So now the man with Alzheimer's sits in that bloody cell all night long. I guess that's the way Larimer County treats its people, its residents of that county with Alzheimer's. Slap them in jail. Keep them there all night long. You didn't give the wife the requested accommodation by the wife. What accommodation did you provide? If I may, there were six accommodations. If you may, none. No, there were six, Your Honor, respectfully. All right. Tell us what they are, then, because I misunderstood the record. There were six accommodations that were made to this family to facilitate communication between Mr. and Mrs. Kropp. The first was the initial phone call from the jail to Mrs. Kropp to notify her that Mr. Kropp was actually in the facility. That's not something that is ordinarily done. Second of all, there was a second phone call, a conversation, when Mrs. Kropp arrived at the jail. She was allowed to speak with her husband. That is an accommodation to help facilitate their communication. Was that afforded to the non-disabled? That record is not clear. Was that afforded to the non-disabled? It is not something that typically happens. The patients or people in detention are allowed to communicate? They can, but, again, recognize the hour of this communication was on lockdown hours. And so this is an accommodation, again. The law doesn't say that Larimer County has to give Mr. Kropp something additional or extra or special. It has to put him on equal footing as a non-disabled person, and that is what the jail did. The other accommodation efforts were an offer made to Mrs. Kropp to have her speak to medical personnel once she raised the issue that her husband had Alzheimer's. Did they have personnel come in to speak to the... They did, but she refused. It's a common theme in this case. Mrs. Kropp refused every accommodation except the one she requested, in which case she is in line with the plaintiff and barber in that she's fine and wants her accommodation, but she doesn't want to engage in the interactive process to find a reasonable accommodation. She just wants her accommodation. And she refused to speak to medical personnel. She refused the offer to speak to pre-trial. It was an offer made, because I didn't get that for the record, that an offer of medical personnel to come in and speak to the disabled person. It was, and Mrs. Kropp refused because she didn't want to speak to the medical personnel through the glass, and she didn't want to speak to them with Corporal Wolfert present. And so she refused to speak to both of them. I'm not talking about the wife. I'm talking about the medical, the handicapped person, the husband. Was there an offer made for the husband to speak with medical personnel? He would have spoken. He did speak with medical personnel through the intake process, yes, sir. He also spoke with pre-trial services. And again, the two, to me, the two facts that are undisputed here that this case turns on are that Mrs. Kropp refused to use the visitation booth, and ultimately Mr. Kropp completed the paperwork that the plaintiff says is too complex for him to understand. He ultimately completed that paperwork. What, the next morning? Well, he ultimately completed the paperwork some nine hours later and was released without the assistance of Mrs. Kropp and without the familial contact visit, which was the accommodation that was requested by Mrs. Kropp. To me, that cuts directly against, and it's undisputed, the necessity of the accommodation requested by Mrs. Kropp. Certainly that was her preference, but it wasn't necessary. Well, could you finish up with your six accommodations? I can. The third thing was she could speak to medical personnel, which you were willing to provide. However, she did not want to speak to the medical personnel that you were going to provide with someone else present. Correct. So it was through the glass as well, not the visitation booth. And also through the glass. But it's basically a control booth. And then the jail corporal was standing next to, on the other side of the glass with the medical personnel, was standing next to her. So she didn't want to speak to the medical personnel through glass. And with the corporal present. The same was true when she was given the opportunity or offered the opportunity to speak to pretrial supervision. These are the folks that had provided Mr. Kropp the paperwork that he needed to sign to be released from jail. Is this disputed at all? No. Is these accommodations? Well, they may be disputed by the plaintiff if they're accommodations. These facts are not in dispute. Well, I understand. Right. Yes. In terms of what you offered. Correct. Visit with a pretrial supervisor. She didn't want one. Same reasons. Okay. Didn't want to speak through the glass partition and presumably with corporal Wolfert present. The last two was the offer to utilize the visitation booth. That is an accommodation. And we would argue that it's a suspended accommodation. It is available to everyone, isn't it? Well, it is. But again, like the wheelchair accessibility grant, just because it's available to everybody does not mean it's not an accommodation. Because simply if they had met hypothetically, we don't know because Mrs. Kropp refused to do so, but had they met in the visitation booth, he could have held up the paperwork to the glass. She could have looked at it. She could have spoke to him through the phone, helped him interpret it. And that communication very likely or could have been sufficient to help him understand that. But we won't know because Mrs. Kropp refused to do that. And I think, Judge Lucero, you asked a question. Actually, I think Judge Moore did. Let's get to the sixth one first. The sixth one was the 3 a.m. call to the lieutenant who was off duty. They provided the lieutenant when Mrs. Kropp wasn't satisfied with corporal Wolfert's response in saying, we're not going to modify our security protocols and allow you to come back. If you want to speak to my supervisor, he's not on duty, but I will call him at home. And so they roused him out of bed at 3 a.m. and he spoke with Mrs. Kropp. And he allowed her to do it? He did not give her or say, yes, we will give you your request. That's not an accommodation. What's an accommodation about that? Well, it's an effort by the jail to go out of their way to try and help facilitate. I think you might be misusing the descriptor accommodation. I think what you have recited are the facts evident here. We don't get to accommodation until there's a necessity. Correct. That is correct. And there is no necessity here. And as the Tenth Circuit has held in the Cinnamon Hills case, necessity seems to imply something indispensable or essential or that something cannot be done without. Necessity means is showing that you are disabled. It means, for example, that an airplane pilot who needs glasses to fly does not have to be offered to fly without them and say that's an accommodation because everybody else can fly without glasses. The necessity is showing that he needs the glasses for that communication. And the wife told you that he needed this personal touch and personal communication and assistance in order to be able to communicate with him. And that talking through a barrier of glass and telephones like everybody else who isn't disabled is not an accommodation. Well, Your Honor, she asserted that. So there's a big disagreement as to what the meaning of necessity means. Well, I think necessity is defined clearly under the Tenth Circuit case law in Cinnamon Hills. It certainly is. And quite frankly, there just has been no showing of necessity here as evidenced by the undisputed fact that Mr. Kropp did sign the paperwork and was released without the use of this familial contact visit that Mr. Kropp requested. So if he had signed 20 hours later, that would prove that it wasn't necessary to have communication? Well, no, there was another. The fact that it only took nine hours is proof that it wasn't necessary, according to you? The fact that if the benefit that is being sought, as the plaintiffs have established, is understanding, he was able, presumably, because he signed these forms. We don't really know if he understood, do we? Well, we don't know what an individual understands. We can only act on what's the evidence in the record The one thing you argue that causes me pause is the fact that you're saying that he was not the wife, but he was afforded the assistance of professional medical personnel to help him fill out the forms. And I think that may carry the day for you, if that's in the record. And I don't know, he was afforded pre-trial services personnel sat down with him, and the district court found in the record that he was assisted, that this argument that the jail simply did nothing was a disingenuous argument, that pre-trial did sit down with him. I don't know if medical sat down with him, just to be clear, Your Honor. What do you mean to be clear? You told us a while ago that you did, and that you did offer that, and that's my concern. We offered Mrs. Cropp the ability to talk to the medical professionals to discuss her husband's condition. She refused. Had she done so, what was the idea of the outcome of that? Well, perhaps she could have established necessity by having a conversation with medical personnel, and they could have said, yeah, actually, this visitation booth won't work. She actually does need hands-on physical contact. But that never happened, and that fact is not in the record. And I apologize. I'm out of time. Thank you. Thank you. At page 948 of the record, Corporal Wolford has talked about the issue, I believe, anyway, the record's not crystal clear, of a pre-trial person explaining the forms to Mr. Cropp. She was asked, as you understood it, that was ineffective, and he was still unable to understand the forms. Her answer was yes. So at a minimum, that creates a fact dispute about whether any reasonable accommodation was offered to Mr. Cropp. I also want to go back to the issue of necessity, because it seems to be one of the main questions presented by this panel. The focus from appellees and on some of these questions has been on Kathy Cropp. The issue is Stanley Cropp. He is the man with the disability. Let's say Kathy said, you know, I'm done with you all. I want to leave. That's her prerogative. That doesn't absolve the jail of its prerogative to ensure that Mr. Cropp can understand these legal forms. And Kathy's conduct here is, it's relevant in terms of the analysis of deference and what the jail should have tried to do. But ultimately, it doesn't give the jail carte blanche to tell the man with the disability, not Kathy, but Stanley, that tough luck. We don't like how your wife's behaving. So we're going to let you stay in this freezing cold cell until your will is overcome and you eventually give in to citing these forms that you don't understand. That is what they, I mean, it wasn't about we don't like how your wife's behaving. It was about we're not willing to provide the accommodation your wife requests. That is one question for the jury. Number two is, was the jail reasonable? No, that was reasonable. Sure. And that's a fact-specific question. And then there's a second one of even assuming that the jail didn't have to provide that in-person contact visit, what else did the jail do to ensure that Mr. Cropp was able to interpret these forms at the same level, roughly, as someone who didn't suffer from his profound disabilities? Another key issue. Well, the argument is that he was afforded that. Well, at least that's what I understood the argument to say. I did not understand that from the briefs or from reading Judge Payne's order. And I didn't understand it from the record. Also, in their motion for summary judgment, they never argued they provided him with some other reasonable accommodation. They simply said we didn't have to give an in-person visit. That's the end. So at a minimum, there's certainly – it seems based on Wolfert's testimony. Number one, Mr. Cropp was never accommodated. Number two, it wasn't unduly burdensome for the jail to accommodate the request other than this absolute prohibition. Number three, the fact that this only, as far as I'm aware, possible accommodation in the record was described by Cobra Wolfert as not being effective. For these reasons, among others, certainly a question remains here for the jury about whether the Rehab Act and the ADA was complied with. Judge Moritz, to go back to another issue you raised earlier, well, couldn't anyone do this? I mean, I don't mean to have a mocking tone or anything. But the issue here is – no, of course not. A person has to have a disability. And, I mean, the record is crystal clear here that the jail was on notice. And it looks like it was on the report. Chris, can I ask you – you seem to be suggesting now that, let's say, that particular accommodation wasn't necessary because she didn't even want to try it, maybe. But that somehow the jail still had an obligation to try some other accommodation or to come up with something else. And I guess I didn't really see your complaint or your briefing, at least on appeal, as making that argument. You very much focused on the auxiliary aid, that particular population, and said, this is what requires this accommodation. She happens to be the auxiliary aid or auxiliary service that he needs. And she was basically the option. And they didn't allow her to talk to him. I didn't see you saying, well, maybe there was somebody else or something else or some other way they could have communicated. She even seemed to be saying, I'm the person that needs to be his aid. You see what I'm saying? I understand. And I respectfully submit that it is raised in the briefing at this level and perhaps more importantly also at the district court level it was raised, among other pages, at Appendix 895 and 896. Because for the district court's consideration in our response to the defendant's motion for summary judgment, we emphasized that in addition to the lack of this in-person visit, no other accommodation was offered. So it was an issue that was squarely before the district court. It's again presented to this court in our appellate briefing. And for these reasons, the district court's entry of summary judgment in favor of the county should be reversed. Thank you. Case is submitted. We appreciate your arguments this morning.